IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TINA BENEUX-CARRELL                                                                                    PLAINTIFF

               v.                    Civil No. 2:11-cv-02174-PKH-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                         DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**     **Factual and Procedural Background**

      Plaintiff, Tina Beneux-Carrell, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

      Plaintiff protectively filed her applications on May 28, 2010, alleging a disability onset date of April 20, 2010, due to human immunodeficiency virus ("HIV") infection, depression, and anxiety. Tr. 161. On the alleged onset date, Plaintiff was thirty-five years old with a high school education. Tr. 17, 38, 162, 310. She has past work as a cashier. Tr. 16, 68, 170-177, 203-210.

      Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 77-87. At Plaintiff's request, an administrative hearing was held on May 19, 2011. Tr. 34-72. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on July 11, 2011, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-18. Subsequently, the Appeals Council denied Plaintiff's Request for Review on August 22, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks

judicial review of that decision.

**II.    Medical History**

Plaintiff has a history of HIV (diagnosed in 2006), depression, chest pain, and anxiety. Tr. 468, 627-790. She was placed on antiretroviral medication beginning in January 2008. Tr. 676-678. On December 10, 2008, Plaintiff was treated at Sparks Regional Medical Center ("Sparks") for chest pain that radiated to her left arm. Tr. 515-548. On examination, Plaintiff's heart had regular rhythm and rate, with no murmurs, and her lungs with clear to auscultation bilaterally. Tr. 535. Respirations and chest wall were within normal limits. Tr. 535. Electrocardiogram ("ECG") and chest x-ray results were normal. Tr. 540-541. A stress test, performed at AHEC, was also normal. Tr. 763-766. Plaintiff was diagnosed with chest pain of unknown cause and discharged with a prescription for Lortab. Tr. 533, 547.

On January 22, 2009, Plaintiff presented to Sparks with complaints of chest pain and heart palpitations. Tr. 549-588. Plaintiff's physical examination was normal except for tachycardia. Tr. 555. An ECG and chest x-rays yielded normal results. Tr. 580, 583. Plaintiff was diagnosed with heart palpitations and provided a Holter monitor to identify a possible arrhythmia. Tr. 562-563. The Holter Report Summary showed a maximum of 155 beats per minute and a minimum of 55 beats per minute. Tr. 582. There were no AV conduction abnormalities or pauses, no ventricular abnormalities, and extremely rare premature atrial beats, all of which were single. Tr. 582. Plaintiff was discharged the same day in stable and improved condition. Tr. 575.

Plaintiff received routine treatment at AHEC- Fort Smith. Tr. 252-298. On January 29, 2009, Plaintiff was prescribed Celexa and Ativan for depression and anxiety. Tr. 754-757. Follow-up notes from February 10, 2009, reveal that these medications helped Plaintiff's anxiety symptoms,

and she reported only one panic attack since her last visit. Tr. 758-760. Additionally, although Plaintiff reported some anhedonia and decreased motivation, her appetite and sleep had improved. Tr. 758. Plaintiff's CD4 testing was within normal limits. Tr. 768. On April 2, 2009, Plaintiff reported more frequent panic attacks. Tr. 252-253. Plaintiff reported that Celexa seemed to work, as her mood was good and she did not feel depressed. Tr. 252. However, she reported continuing panic attacks despite taking 0.5mg of Ativan. Tr. 252. Plaintiff was assessed with panic disorder, as deteriorated, and depression, improved. Tr. 253. Alex Freeman, M.D., increased Plaintiff's dosage of Celexa from 20mg to 40mg and refilled her prescription for Ativan. Tr. 253. On April 21, 2009, Plaintiff reported that her anxiety was worse. Tr. 258-260. As a result, Jimmy Acklin, M.D., discontinued Celexa and prescribed Sertraline and Hydroxyzine. Tr. 259.

In September 2009, Plaintiff returned to the clinic and stated that Sertraline had helped initially, but was no longer as effective in controlling her anxiety. Tr. 261-263. Dr. Acklin noted that Plaintiff was tolerating her antiretrovirals without problems. Tr. 261. On examination, Plaintiff was oriented to time, place, and person. Tr. 262. She appeared anxious, but not agitated or depressed. Tr. 262. Plaintiff's memory was intact for recent and remote events, and her judgment and insight were intact. Tr. 262. Dr. Acklin diagnosed Plaintiff with panic disorder, deteriorated, depression, deteriorated, and HIV infection, stable. Tr. 263. He prescribed Trazodone and encouraged Plaintiff to continue Sertraline. Tr. 263. A CD4 lab test yielded results within the average range. Tr. 266.

On February 3, 2010, Plaintiff reported that her antidepressants were no longer effective, she was having chest pain, nausea, and heart palpitations at night, and she had rashes on her legs. Tr. 271-274. Dr. Acklin discontinued Sertraline, increased Plaintiff's prescription of Trazodone, and

switched Plaintiff to Atripla, a once-daily HIV medication. Tr. 274.

On April 28, 2010, Plaintiff returned to AHEC with complaints of acute depression and anxiety due to recently being terminated from her job. Tr. 282-285. She quit taking her Trazodone because "she just didn't care anymore." Tr. 282. However, she remained complaint with her HIV medication. Tr. 282. Dr. Acklin stated that Plaintiff "is considering whether to just file for disability, and asked my opinion. I told her that her HIV status alone would not be disabling, but that her problems with anxiety and depression might be." Tr. 282. He advised Plaintiff to seek legal help regarding her work situation and disability. Tr. 282. Dr. Acklin reduced Plaintiff's dosage of Trazodone to 100mg and prescribed Paroxetine at 20mg. Tr. 284. Plaintiff's laboratory results were normal. Tr. 295.

In a Physical Residual Functional Capacity ("RFC") Assessment dated June 25, 2010, Jim Takach, M.D., an agency specialist, determined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand and/or walk for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push and/or pull an unlimited amount, except as shown for lift/carry. Tr. 301-308. Dr. Takach found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 303. He found no manipulative, visual, communicative, or environmental limitations. Tr. 304-305. Dr. Takach noted that Plaintiff did not have manifestations of severe immunocompromised status of AIDS and had a current undetectable viral load. Tr. 302.

On July 16, 2010, Plaintiff underwent a consultative mental evaluation with Terry L. Efird, Ph.D. Tr. 309-312. Plaintiff reported being terminated from her previous job after her employer found out she was HIV positive. Tr. 309. She reported sleep problems, lack of interest, difficulty

concentrating and making decisions, low energy, panic attacks, and feeling "pretty much down in the dumps" most of the time. Tr. 309. When asked about current medications, Plaintiff stated she was taking Trazodone and an antidepressant, with no reported side effects. Tr. 310. Plaintiff stated her medications were somewhat beneficial. Tr. 310.

On examination, Plaintiff was alert and oriented to person, place, and time. Tr. 311. Plaintiff's mood was sad and her affect was appropriate to content to somewhat restricted in range. Tr. 310. Thoughts were primarily logical, relevant, and goal-directed, and Plaintiff denied suicidal and homicidal ideation. Tr. 311. Dr. Efird estimated Plaintiff's intelligence to be within the borderline to low average range. Tr. 311. He noted that Plaintiff endorsed significant symptom criteria for a diagnosis of depression and panic disorder with agoraphobia. Tr. 311. However, Dr. Efird found that, in light of Plaintiff's recent termination from employment, a diagnosis of adjustment disorder with mixed anxiety and depression was more appropriate. Tr. 311. He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 50-60.[1] Tr. 312. Dr. Efird noted that Plaintiff could perform most activities of daily living, communicate and interact in a socially adequate manner, perform basic cognitive tasks required for basic work-like activities, and persist and complete tasks within an adequate time frame. Tr. 312. He found moderate difficulty with immediate auditory attention span. Tr. 312.

In a Psychiatric Review Technique Form ("PRTF") dated July 20, 2010, Diane Kogut, Ph.D., an agency consultant, determined that Plaintiff's impairments did not meet or equal the criteria for

---

[1] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders), as she had only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 321-334. In a Mental RFC Assessment, Dr. Kogut found Plaintiff moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 317-320. Dr. Kogut found Plaintiff not significantly limited in all remaining work-related categories. Tr. 317-318. She determined Plaintiff could perform unskilled work. Tr. 319.

On October 21, 2010, Dr. Acklin completed an Attending Physician's Statement, in which he found that Plaintiff's HIV, panic disorder, and depression symptoms were severe enough to interfere with her attention and concentration and her ability to tolerate work stress. Tr. 626. Dr. Acklin determined Plaintiff would need unscheduled breaks during an eight-hour workday and would likely miss more than four workdays per month. Tr. 626. He found Plaintiff incapable of performing full-time work and did not expect a fundamental or marked change for the better in the future. Tr. 626.

On January 26, 2011, Plaintiff saw Dr. Acklin for a routine checkup with lab work. Tr. 778-790. Plaintiff reported continuing chest pain. Tr. 778. She had quit taking her depression and anxiety medications several months ago. Tr. 778. She reported a "great mood" despite some anxiety

episodes. Tr. 778. Plaintiff remained complaint with Atripla, her HIV medication. Tr. 778. On examination, Plaintiff was smiling easily and her mood was "clearly better than last visit." Tr. 779. Her respiratory and cardiovascular examinations were normal. Tr. 779. Chest x-rays revealed a questionable small nodule on the left lateral mid lung, but were otherwise normal. Tr. 783. An ECG yielded normal results. Tr. 781. Laboratory testing revealed normal CD4 levels and an undetectable viral load. Tr. 784-786. Dr. Acklin diagnosed Plaintiff with chest pain, as deteriorated, panic disorder and depression, as improved, HIV infection, as improved, and tobacco abuse, as stable. Tr. 780-781. He prescribed Chantix to aid in smoking cessation. Tr. 781.

### III.    Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical

or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.    ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since April 20, 2010, the alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffers from asymptomatic HIV infection, depression, and adjustment disorder with mixed anxiety and depression, which were considered severe impairments under the Act. Tr. 12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12-14.

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she could only occasionally climb, balance, stoop,

kneel, crouch, and crawl. Tr. 14-16. Mentally, the ALJ determined Plaintiff could perform work in which interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required, and the supervision required is simple, direct, and concrete. Tr. 14-16.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 16. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Accordingly, the ALJ determined Plaintiff was not under a disability from April 20, 2010, the alleged onset date, through July 11, 2011, the date of the administrative decision. Tr. 18.

## V. Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) dismissing her treating physician's opinion; (B) improperly determining her RFC; and (C) dismissing her subjective complaints. *See* Pl.'s Br. 9-16. For the following reasons, the court finds that substantial evidence supports the ALJ's decision.

### A. Dr. Acklin's Attending Physician's Statement

First, Plaintiff contends that the ALJ improperly dismissed Dr. Acklin's Attending Physician's Statement. *See* Pl.'s Br. 9-10. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to

---

[2] The ALJ determined Plaintiff could perform the requirements of representative light, unskilled occupations such as clerical worker, of which there are 1,382 jobs in Arkansas and 208,175 jobs nationally, and assembler, of which there are 11,184 jobs in Arkansas and 657,969 jobs nationally. Tr. 17, 68-70.

determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

Substantial evidence supports the ALJ's decision to attach less weight to Dr. Acklin's opinion. Dr. Acklin's Attending Physician's Statement was a one-page checklist, in which he determined Plaintiff could not perform full-time work. Tr. 626; *see Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (treating physician's opinion deserved no greater deference than any other physician's opinion when it consisted of nothing more than vague, conclusory statements); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (a medical source opinion that a claimant is "disabled" involves an issue reserved for the Commissioner and is not the type of medical opinion entitled to controlling weight). Dr. Acklin provided no objective findings or other support for his conclusion. Moreover, Dr. Acklin's opinion was inconsistent with his own treatment notes and the medical evidence as a whole, especially in light of his subsequent January 26, 2011, notation that Plaintiff had quit taking her anxiety and depression medications, was in a "great mood," was "smiling easily," and was clearly better since her last visit. Tr. 778-779; *Martise v. Astrue,* 641 F.3d 909, 926 (8th Cir. 2011) (treating physician's opinion is properly discounted when it is inconsistent with physician's own treatment notes or medical evidence as a whole). Finally, since Dr. Acklin was a general practitioner and not a mental health professional, the ALJ did not err in assigning less weight to his opinion regarding Plaintiff's mental limitations. 20 C.F.R. § 416.927(c)(5) ("we

generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). For these reasons, the ALJ did not err in dismissing Dr. Acklin's Attending Physician's Statement.

    B. RFC Determination

Additionally, Plaintiff argues that the ALJ erred in determining her RFC. *See* Pl.'s Br. 10-14. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Substantial evidence supports the ALJ's RFC determination. The medical evidence of record shows that Plaintiff's HIV was successfully controlled with antiretroviral medication and regular checkups. Dr. Acklin repeatedly noted that Plaintiff's HIV was stable. Tr. 263, 780-781; *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling). Moreover, the ALJ properly considered Plaintiff's HIV-related symptoms, such as fatigue and weakness, when he limited Plaintiff to light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 14. For these

reasons, the ALJ did not err in his evaluation of Plaintiff's HIV-related limitations.

Substantial evidence also supports the ALJ's mental RFC determination. For reasons stated in Section V(A) of this opinion, the ALJ properly dismissed Dr. Acklin's Attending Physician's Statement. The ALJ gave more weight to Dr. Efird's evaluation and the Mental RFC Assessments completed at the agency level. *Estes,* 275 F.3d at 725 (it is the ALJ's function to resolve conflicts of opinion among various treating and examining physicians). Dr. Efird estimated Plaintiff's GAF score at 50-60, which is consistent with the ALJ's moderate mental findings. Tr. 312. Dr. Efird noted that Plaintiff could perform most activities of daily living, communicate and interact in a socially adequate manner, perform basic cognitive tasks required for basic work-like activities, and persist and complete tasks within an adequate time frame. Tr. 312. He found moderate difficulty with immediate auditory attention span. Tr. 312. Similarly, Dr. Kogut found Plaintiff moderately limited in several work-related areas, but ultimately determined she was capable of performing unskilled work. Tr. 317-320. These evaluations are consistent with one another and consistent with the objective medical evidence as a whole. Accordingly, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

### C. Credibility Determination

Finally, Plaintiff alleges the ALJ improperly dismissed her subjective complaints. *See* Pl.'s Br. 14-16. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of

medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons. With regard to activities of daily living, the ALJ noted that Plaintiff is able to drive, take care of three children, shop for groceries three times a week, perform household chores including dishes and laundry, prepare meals, and perform a wide range of activities independently and effectively. Tr. 13, 59-60, 180-186, 216-222; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). Additionally, the ALJ found that Plaintiff's HIV was well-controlled with antiretroviral therapy and routine checkups. Tr. 14-15; *Schultz,* 479 F.3d at 983 (an impairment that can be controlled by treatment or medication is not considered disabling). The ALJ also noted periods of noncompliance with Plaintiff's depression and anxiety medication. Tr. 15, 282,

778; see *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ may consider noncompliance with medical treatment in weighing claimant's credibility). Finally, the ALJ found that Plaintiff's subjective complaints were simply inconsistent with the objective evidence in the record. Tr. 14-16; *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

**VI.    Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice. **The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of July 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE